**UNITED STATES of America, Appellee,**

v.

**Abdul–Rahma ADEDIRAN, also known as Adediran Babatumte, also known as Francis Machante, also known as David K. Bolade, Appellant.**

No. 93–3821.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1994.

Decided June 8, 1994.

Allen I. Harris, St. Louis, MO, argued, for appellant.

Jonathan I. Goldstein, St. Louis, MO, argued (Edward L. Dowd, Jr. and Jonathan I. Goldstein), on the brief for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

HENLEY, Senior Circuit Judge.

Abdul–Rahma Adediran appeals his conviction and sentence for falsely misrepresenting his Social Security Account Number (SSAN), with the intent to deceive and for the purpose of obtaining something of value, in violation of 42 U.S.C. § 408(a)(7)(B) (1991). We affirm.

## I.

In late October 1991, Adediran, posing as Francis Machante and using false SSANs, opened accounts with Mail Boxes, Etc. and Answer St. Louis, a telephone answering service. In December 1991, Adediran opened checking accounts at five banks in the St. Louis area. At each bank he posed as Francis Machante, providing a false Wisconsin identification in that name. His initial deposits ranged from $100.00 to $130.00, and he used different SSANs, all of which were false, at each bank.

One of the account representatives who dealt with Adediran became suspicious when she recognized the address he gave as belonging to Mail Boxes, Etc. She alerted the local police, who, after further investigation, apprehended Adediran. Adediran was held for several days until he posted bond. He was then released with instructions to appear for arraignment on January 15, 1992. On that date, Adediran failed to appear as ordered.

On December 23, 1991, a person using the name David Bolade opened three accounts at banks in Rockford, Illinois. All of the accounts were opened with $100.00 deposits and with different SSANs, all of which were false. A fictitious Wisconsin identification was provided to each institution. In January 1992, the Rockford banks began receiving deposits for the Bolade accounts. Included in these deposits were several checks originally issued to Adediran by one of the St.

Louis banks. These checks were never paid, but while the balances on the Bolade accounts remained inflated, over $10,000.00 was withdrawn from the Rockford banks. Adediran was eventually arrested in Chicago, Illinois, in April 1993.

In a seven-count indictment Adediran was charged with violating 42 U.S.C. § 408(a)(7)(B). Each count related to one of the St. Louis institutions at which he had presented a false SSAN. At trial the government presented evidence concerning events in both St. Louis and Rockford. Adediran objected to admission of the Rockford evidence, claiming the government had failed to establish that he was the person responsible for those incidents. The district court[1] overruled the objection and admitted the evidence under Rule 404(b) of the Federal Rules of Evidence.

The jury eventually found Adediran guilty on all seven counts. The district court then imposed sentence based in part on the financial losses suffered by the Rockford institutions. In addition, the court increased Adediran's base offense level for obstruction of justice.

## II.

■ On appeal, Adediran claims the district court abused its discretion in admitting the Rockford evidence pursuant to Rule 404(b). The government argues in response that the evidence was not subject to Rule 404(b)'s requirements because it was proof of the crime charged. Alternatively, the government contends the evidence was properly admitted under that rule. Though this may well be a case where the other crime is so "inextricably intertwined" with the charged crime that Rule 404(b) is not implicated, *United States v. DeLuna,* 763 F.2d 897 (8th Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985), we will apply that rule's more rigorous requirements. This decision does not affect our ultimate conclusion.

Rule 404(b) prohibits admission of evidence of other crimes for the purpose of proving action in conformity therewith but allows admission for other purposes, such as proof of intent. This court has held that other crimes are admissible if (1) relevant to a material issue, (2) established by a preponderance of the evidence,[2] (3) more probative than prejudicial, and (4) similar in kind and close in time to the events at issue. *King v. Ahrens,* 16 F.3d 265, 268 (8th Cir.1994); *United States v. Aranda,* 963 F.2d 211, 215 (8th Cir.1992).

■ Adediran does not contest either that the Rockford evidence was relevant to intent or that it was similar in kind and close in time to the acts for which he was prosecuted. Instead, he asserts that there was insufficient proof of his involvement in Rockford and that the evidence was more prejudicial than probative. We reject both contentions. First, we believe a preponderance of the evidence linked Adediran to Rockford. Most important in this regard was the deposit in Rockford of the very checks issued to Adediran by a St. Louis bank. Moreover, the schemes in St. Louis and Rockford were similar in several respects. In both cities, the person opening checking accounts did so with minimal cash amounts and a fictitious Wisconsin identification. False SSANs were used at different banks, but at all banks the numbers began with the same five digits. Though Adediran relies primarily on the fact that no Rockford witness could identify him at his trial, which took place some eighteen months after the Bolade accounts were opened, both testimony and photographs indicated that the person posing as David Bolade was a tall, thin, African–American male. Adediran fits this description. Finally, handwriting samples of both Francis Machante and David Bolade were submitted for the jury to compare. Similarities between the two signatures are evident.

1. The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

2. *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1987), establishes that a preponderance standard is appropriate. *See United States v. Aranda,* 963 F.2d 211, 215 n. 5 (8th Cir.1992); *United States v. Mothershed,* 859 F.2d 585, 588 n. 2 (8th Cir.1988).

■ As to Adediran's argument that the unfair prejudice resulting from the Rockford evidence outweighed its probative value, we note that the district court made an explicit finding to the contrary. Such balancing is peculiarly within the discretion of the district court and should not be disturbed absent a clear showing of abuse. *United States v. Brown,* 956 F.2d 782, 786 (8th Cir.1992). Considering the substantial probative value of the Rockford evidence, we can find no clear abuse in this case.

■ Adediran also contends he received insufficient notice of the government's intent to introduce "other crimes" evidence. In particular, he notes that before trial he filed a motion requesting information regarding prior bad acts. The government's response failed to indicate any intention to introduce the Rockford incidents.

Rule 404(b) provides that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Though the government failed to indicate its intention to introduce the Rockford events in its direct response to Adediran's motion, defense counsel admitted before trial that the Rockford evidence had been fully disclosed and that he was aware of the government's intention to present it. In light of these admissions, the failure to respond directly to Adediran's motion was not fatal.

### III.

Adediran contests the sufficiency of the evidence, but his argument is conditioned on a ruling that the Rockford evidence is inadmissible. Because we have ruled adversely to Adediran on the evidentiary issue, we need not reach the sufficiency claim. Nevertheless, after careful review, we hold that, with or without the Rockford evidence, the record sufficiently supports the jury's verdict.

### IV.

Adediran challenges two aspects of his sentence. First, he argues that the district court erred in considering in its calculations the losses suffered by the Rockford banks. This argument is without merit, for it is based solely on the already rejected contention that there was insufficient evidence linking Adediran to Rockford. Because we have held that a preponderance of the evidence supports a conclusion that Adediran opened the Bolade accounts, the district court did not clearly err by making that finding.

■ Adediran next contends the district court erred in imposing a two-point enhancement for obstruction of justice. This enhancement, imposed pursuant to U.S.S.G. § 3C1.1, was based on three factors: Adediran's failure to provide his true identity to police, his momentary refusal to submit to fingerprinting, and his failure to appear for state court proceedings in January 1992. Adediran claims that none of these factors justifies the enhancement. He argues that his momentary refusal to be fingerprinted was of such short duration that it caused no hindrance, that his failure to properly identify himself did not actually cause a significant hindrance to the investigation, and that his failure to appear is excused because it involved a state rather than a federal court. Because it is dispositive, we consider only Adediran's failure to appear.

Section 3C1.1 provides as follows:

If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

Application note 3(e) provides that "willfully failing to appear, as ordered, for a judicial proceeding" warrants an obstruction enhancement. Without a doubt, if Adediran had failed to appear for a federal court date, the enhancement would have been proper. We must therefore decide whether the mere fortuity of being charged in state court should excuse Adediran's blatant attempt to avoid the administration of justice.

We note first that the Guidelines make no distinction between state and federal authorities or proceedings. Section 3C1.1 itself requires only that the obstruction occur "during the investigation, prosecution, or sentencing of the instant offense." This of course requires some connection between the obstructed state proceedings and the investigation of the federal offense. However, this requirement is easily satisfied here, for Adediran's misrepresentation of his SSAN was an intimate part of the conduct for which local police arrested him. .

Few courts have explicitly dealt with the federal-state distinction in this context. However, in *United States v. Lato*, 934 F.2d 1080 (9th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 271, 116 L.Ed.2d 224 (1991), the Ninth Circuit rejected the argument that Adediran now proposes. That court reasoned as follows:

> The actions of Lato were certainly designed to obstruct the investigation of the offense he committed, that is to prevent the successful uncovering of his scheme to defraud insurance companies. That fraud violated federal as well as state law, and we are satisfied that Lato made no rarefied distinction between them when he sought to cover up his crime. Nor should we. Indeed, it is not likely that, absent the Guidelines, any sentencing judge would fail to consider Lato's activities when it became time to pronounce sentence. There is no reason to think that the Guidelines were intended to change that sensible approach to Lato's culpability.

*Lato*, 934 F.2d at 1083; *see also United States v. Emery*, 991 F.2d 907 (1st Cir.1993) ("[S]o long as some official investigation is underway at the time of the obstructive conduct, the absence of a federal investigation is not an absolute bar to the imposition of a section 3C1.1 enhancement.").

Moreover, several Eighth Circuit opinions have upheld enhancements even when the obstruction involved state authorities. *See, e.g., United States v. Ball*, 999 F.2d 339, 340 (8th Cir.1993) (because defendant was facing federal drug charges at the time, his attempt to escape from county jail following his arrest on a state assault charge constituted obstruction of federal investigation); *United States v. Dortch*, 923 F.2d 629, 632 (8th Cir. 1991) (throwing bag of cocaine out of car during traffic stop by local police supported obstruction enhancement in federal prosecution); *United States v. Paige*, 923 F.2d 112, 114 (8th Cir.1991) (engaging in high speed chase with state highway patrol and throwing evidence out window supported enhancement). We conclude that this circuit does not prohibit obstruction enhancements in federal prosecutions merely because state entities were involved. Furthermore, we find the reasoning of the *Lato* court persuasive. Consequently, we hold that the district court did not err by imposing the two-level enhancement for obstruction of justice.[3]

Accordingly, the judgment of the district court is affirmed.

---

**3.** Adediran's failure to properly identify himself also may have justified the enhancement, for authorities were forced to run his prints through several services before discovering his true identity. Nevertheless, Adediran argues that such checks are routine and that the police therefore did nothing more than what they would have done had he properly identified himself. Conse-

quently, he claims the evidence does not support a finding that his conduct "actually resulted in a significant hindrance," as is now required by U.S.S.G. § 3C1.1, comment. (n. 4). Because we hold that the failure to appear warrants imposition of the enhancement, we need not decide whether this argument has merit.