97 F.3d 1453
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Oliver UNDERWOOD and Gerald K. Underwood, Defendants-Appellants.
 No. 95-5441, 95-5442.
 United States Court of Appeals, Sixth Circuit.
 Sept. 20, 1996.
 
 Before: WELLFORD, NORRIS, and DAUGHTREY, Circuit Judges.
 WELLFORD, Circuit Judge.
 
 
 1
 Defendants Gerald and Oliver Underwood appeal after being convicted of numerous crimes in connection with a scheme to transport cocaine through the United States mail. Defendants contend that a host of errors were committed in the court below. We disagree and thus AFFIRM.
 
 I. FACTS
 
 2
 On July 14, 1993, United States Postal Inspector Vance Arnold suspected that controlled substances were being transported in two Express Mail packages received for delivery by the United States Post Office in Louisville, Kentucky from an address in Long Beach, California. On the strength of an affidavit from Arnold, warrants were issued and the packages were searched. Inside, officers found a total of 150.6 grams of crack cocaine.
 
 
 3
 Following the search, the packages were resealed and a controlled delivery was made to the respective addressees. The first package, addressed to F.L. Taylor on 2318 Hale Avenue in Louisville, was received at that address by Vivian Earsery. Earsery was arrested on state drug charges upon exiting the residence shortly thereafter with the unopened package in her possession. The second package was addressed to defendant Gerald Underwood at his mother's residence at 244 South Forty-First Street in Louisville. Upon taking delivery of the package and opening it, Gerald was also arrested on state charges.
 
 
 4
 During the search of the Forty-First Street residence, the police obtained consent from Earsery and Susan Suarez, Gerald's girlfriend, to search an apartment leased by Vivian Earsery at 5105 South First Street. Although Earsery's name was on the lease, Gerald and Suarez had been the primary occupants of the apartment for the previous ten or eleven months. A search of the apartment yielded several boxes similar in size and shape to the intercepted packages, $600 in cash, and a .32 caliber handgun in a shoulder holster. The gun was discovered in a chest of drawers located in the bedroom used by Gerald and Suarez. The chest was owned by Suarez and contained a number of Gerald's personal belongings.
 
 
 5
 Additional investigation uncovered several other Express Mail packaging labels indicating mailings from California to various persons in Louisville, including Earsery and Gerald, between May 14, 1992 and July 14, 1993 (the "other mailings"). Comparing the handwriting from these labels with that from the labels on the intercepted packages, the police determined that all of the labels had been prepared by defendant Oliver Underwood, Gerald's brother. The police also discovered sixteen Western Union money transfers by Gerald to Oliver, totalling $3,850.
 
 II. PROCEDURAL HISTORY
 
 6
 As indicated above, Gerald was arrested on state drug charges on July 14, 1993. Roughly two weeks later, he appeared at a preliminary hearing on these charges. Because no lab report was available at that time, the hearing was continued until August 30 and Gerald was released on his own recognizance in the meantime. Gerald subsequently failed to appear for the August 30 hearing and a bench warrant was issued. In November, Gerald was apprehended by a United States Marshal in Greensboro, North Carolina on a federal probation violation warrant.
 
 
 7
 On May 18, 1994, Gerald and Oliver were indicted by a federal grand jury and charged with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846; possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); and using the United States mail to facilitate the commission of a felony drug crime in violation of 21 U.S.C. § 843(b). Gerald was further charged under 18 U.S.C. § 922(g) with being a felon in possession of a firearm.
 
 
 8
 On November 8, 1994, Gerald filed a motion to suppress the cocaine from the packages and the evidence found in his South First Street apartment. Gerald further moved to bifurcate the proof relating to the felon-in-possession count from the government's case-in-chief on the drug counts against him. Both motions were denied. On December 12, a jury found both defendants guilty on all the counts of the indictment.
 
 
 9
 On March 14, 1995, the district court sentenced Oliver to a term of 169 months in prison, to be followed by five years supervised release. Gerald was sentenced to a prison term of 360 months, set to run consecutively to the remainder of the sentence he was currently serving on an unrelated prior conviction. In calculating Gerald's base offense level, the district court assessed a two-point enhancement for obstruction of justice (U.S.S.G. § 3C1.1) based upon his failure to appear before the state court on August 30, 1993. Gerald's sentence also reflected enhancements based upon the district court's determination that Gerald qualified as a career offender (U.S.S.G. § 4B1.1) and an armed career criminal (U.S.S.G. § 4B1.4). This timely appeal followed.
 
 III. ISSUES PRESENTED
 
 10
 We must decide the following issues: (a) whether the district court erred in refusing to suppress the cocaine found in the Express Mail packages delivered to Earsery and Gerald; (b) whether the district court erred in refusing to suppress the evidence found in Gerald's South First Street apartment; (c) whether the district court erred in admitting evidence of the other mailings from Oliver to various persons in Louisville; (d) whether the district court erred in denying Gerald's bifurcation motion; (e) whether the district court erred in admitting at sentencing certain hearsay statements of Earsery; (f) whether the district court erred in classifying Gerald as a career offender and an armed career criminal under the Sentencing Guidelines; (g) whether the evidence is sufficient to sustain Gerald's felon-in-possession conviction; (h) whether the trial court erred in admitting evidence of Gerald's alleged flight from state authorities; (i) whether the district court erred in increasing Gerald's base offense level for obstruction of justice; and (j) whether the district court erred in denying Oliver's motion to sever from Gerald.
 
 IV. ANALYSIS
 
 11
 A. Suppression of the Cocaine Found in the Express Mail Packages
 
 
 12
 1. Was There Justification to Detain the Packages Initially?
 
 
 13
 Defendants first argue that the cocaine found in the Express Mail packages delivered to Earsery and Gerald should have been suppressed because the original detention of those packages by the Postal Service constituted an illegal search and seizure under the Fourth Amendment. The Supreme Court has held, however, that mail may be detained so long as there is a reasonable suspicion of criminal activity. United States v. Van Leeuwen, 397 U.S. 249, 252 (1970). Reasonable suspicion results from specific and articulable facts, and rational inferences therefrom, that reasonably justify an intrusion. Terry v. Ohio, 392 U.S. 1, 21 (1968). Defendants argue that reasonable suspicion did not exist in this case. We disagree.
 
 
 14
 In combating the transportation of narcotics through the mails, the Postal Service has developed a "drug package profile," which targets packages based on certain traits encountered in the vast majority of mailings discovered to contain drugs. These characteristics include: (1) the size and shape of the mailing; (2) whether the package is taped to seal all openings; (3) whether the mailing labels are handwritten; (4) whether the return address is suspicious (e.g., the return addressee and the return address do not match, or the return address is fictitious); (5) unusual odors coming from the package; (6) whether the city of origin and/or city of destination of the package are common "drug source" locales; and (7) whether there have been repeated mailings involving the same sender and addressee. United States v. Daniel, 982 F.2d 146, 150 n. 5 (5th Cir.1993); United States v. Lux, 905 F.2d 1379, 1380 n. 1 (10th Cir.1990).
 
 
 15
 This court has not yet decided whether reasonable suspicion can be aroused by a mailing's conformity to the drug package profile. Other courts, however, have held that the presence of an aggregate of profile factors satisfies the Terry doctrine. See, e.g., United States v. Allen, 990 F.2d 667, 671 (1st Cir.1993) (three factors present); Daniel, 982 F.2d at 150 (six factors present); Lux, 905 F.2d at 1381 (three factors present); United States v. Cantrall, 762 F.Supp. 875, 879 (D.Kan.1991) (three factors present); United States v. Sklar, 721 F.Supp. 7, 10 (D.Mass.1989) (three factors present).
 
 
 16
 In the present case, Postal Inspector Arnold initially suspected that the packages in question contained narcotics because they were from Long Beach, California, a known drug source city; the destination of the parcels--to individuals--was unusual in that most Express Mail packages are sent to businesses; the labels on the packages were handwritten; and the packages had some "volume to them." A cursory investigation of the packages enhanced Arnold's suspicions by revealing that: (1) the recipient phone number listed on the 2318 Hale Avenue package was nonexistent; (2) the person known to be living at 2318 Hale was Frankie Lee Baker, not Frankie Lee Taylor, as the package indicated; (3) Gerald Underwood, the recipient of the other package, had a criminal record; (4) the return addresses on the packages were fictitious; (5) three other suspicious Express Mail packages had been sent to Louisville from Long Beach in the previous eight months: the first two, addressed to Gerald Underwood, bore fictitious return addresses and recipient phone numbers, and the third, addressed to Frankie Baker, also bore a fictitious return address and recipient phone number; and (6) although all of the packages purported to be from different persons and different locations, the labels appeared to have been prepared by the same person. Considering this evidence, we conclude that the Postal Service was justified in detaining the packages in question until a search warrant could be obtained.[1]
 
 
 17
 2. Was There Probable Cause to Search the Packages?
 
 
 18
 Defendants next argue that the cocaine from the packages should have been suppressed because the search warrants were not supported by probable cause. We address this issue by asking "whether the Magistrate had a substantial basis for finding that the affidavit established probable case to believe that the evidence would be found at the place cited." Illinois v. Gates, 462 U.S. 213, 236 (1983); accord United States v. Lawson, 999 F.2d 985, 987 (6th Cir.), cert. denied, 114 S.Ct. 574 (1993). Probable cause exists when " 'there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place.' " Lawson, 985 F.2d at 987 (quoting United States v. Loggins, 777 F.2d 336, 338 (6th Cir.1985)); accord Gates, 462 U.S. at 238. "Such a determination by the issuing judge is to be accorded 'great deference' by the reviewing court." Lawson, 985 F.2d at 987 (quoting United States v. Algie, 721 F.2d 1039, 1041 (6th Cir.1983)).
 
 
 19
 In issuing the search warrants in question, the magistrate relied solely upon Arnold's affidavit. Defendants maintain that the facts set forth therein do not give rise to the level of certainty required to establish probable cause. The government contends, on the other hand, that Arnold's drug interdiction experience plus the averred facts were sufficient to support the warrants.
 
 
 20
 It appears that the Postal Service usually subjects mailings found to be suspicious under the drug package profile to a canine sniff before seeking a search warrant. See, e.g., Daniel, 982 F.2d at 150; Lux, 905 F.2d at 1382. For some reason, however, a sniff was not conducted in this case. Although this omission makes the question of probable cause much closer, we do not believe that it is fatal. Arnold's affidavit sets forth a plethora of facts, detailed previously in connection with our Terry analysis, establishing in convincing fashion that someone from a drug source city was engaged in a regular schedule of mailings to Louisville and that this person felt the need, for some reason, to conceal both his identity and the identities of the addressees. Additionally, Arnold's affidavit informed the magistrate that the Postal Service has, over a number of years, identified many common traits among packages found to contain narcotics and that the packages in question exhibited a substantial number of those traits. See Lawson, 999 F.2d at 987 ("A judicial officer may give considerable weight to " 'the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found.' " (quoting United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir.1987)). Based on the foregoing, we conclude that the magistrate had a substantial basis to believe that drugs would probably be found in the packages.
 
 
 21
 B. Suppression of the Evidence Found in the South First
 
 Street Apartment
 
 22
 In addition to contesting the district court's refusal to suppress the evidence from the packages, Gerald asserts that the evidence found in the South First Street apartment should have been suppressed because the premises were searched without a warrant and because the consent of Susan Suarez was not effective as it was given involuntarily.[2] The validity of a person's consent is generally "a question of fact to be determined from the totality of the circumstances;" thus, the district court's findings will not be reversed unless clearly erroneous. United States v. Taylor, 956 F.2d 572, 577 (6th Cir.), cert. denied, 506 U.S. 952 (1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
 
 
 23
 Gerald's assertions of involuntariness stem from a conversation between Suarez and Officer Brackett of the Louisville Police Department in which Brackett informed Suarez that she could refuse to sign the consent form and stated that, if she did, "we will have to go downtown." Although Brackett testified that his use of the word "we" was not meant to include Suarez, the district court found it conceivable that Suarez interpreted his statement to mean that she would have to go downtown with the officers if she did not sign the form. Nevertheless, the court found any misconception on Suarez's part inconsequential based on her testimony that she was not concerned about the police searching the apartment and that she would have consented to the search even if the officers had not said anything about going downtown.
 
 
 24
 Gerald contends that this ruling was erroneous. In addition to making a number of unsubstantiated assertions regarding Suarez's alleged vulnerability, Gerald argues that Suarez's admission that she would have consented even if going downtown had not been mentioned was only made because the district court badgered her into it. Based upon our review of the relevant portion of the transcript, we disagree. Furthermore, since the district court had the opportunity to observe Suarez's demeanor in testifying, we cannot say that the court committed clear error in crediting this admission. Accordingly, the evidence found in the South First Street apartment was properly admitted.
 
 
 25
 C. Suppression of the Other Mailings Evidence
 
 
 26
 Next, Oliver argues that the district court erred in admitting the portion of Arnold's testimony describing packages, other than the two intercepted by the Postal Service on July 14, 1993, mailed by him to various persons in Louisville between May 1992 and July 1993. Oliver concedes that he did not make this objection at trial and thus we review this contention for plain error. FED.R.EVID. 103; United States v. Mendez-Ortiz, 810 F.2d 76, 78 (6th Cir.1986), cert. denied, 480 U.S. 922 (1987). The plain error doctrine is to be used "only in exceptional circumstances" and only where the error is so plain that " 'the trial judge and prosecutor were derelict in countenancing it.' " United States v. Hook, 781 F.2d 1166, 1172 (6th Cir.) (quoting United States v. Frady, 456 U.S. 152, 163 (1982)), cert. denied, 479 U.S. 882 (1986).
 
 
 27
 Oliver contends that the other mailings evidence should have been excluded under Federal Rule of Evidence 403. Specifically, he asserts that the introduction of testimony from a law enforcement official regarding the other mailings was unfairly prejudicial because the inference to be drawn from those mailings is that he regularly transported controlled substances through the mails, and yet, there was no evidence that they actually contained drugs. We find no merit in Oliver's position. The other mailings are circumstantial evidence of the conspiracy charged in the indictment. We do not deem any prejudice resulting from the admission of this relevant evidence to be unfair. See Mendez-Ortiz, 810 F.2d at 79 (stating that " '[u]nfair prejudice' as used in Rule 403, does not mean the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis").
 
 D. Bifurcation
 
 28
 Concerned that evidence of his three prior felony convictions would prejudice the jury's assessment of his guilt on the drug counts and the possession element of the felon-in-possession count (18 U.S.C. § 922(g)), Gerald requested that the issue of possession be submitted to the jury on interrogatory with no mention of his status as a felon, which would be stipulated to if the jury found possession. Relying on United States v. Barker, 1 F.3d 957, 959 (9th Cir.1993), the district court held that it must deny Gerald's bifurcation motion because to do otherwise would require omitting an element of the charged offense from the jury instructions.
 
 
 29
 In Barker, the district court granted the motion of a defendant, charged with a violation of § 922(g), to bifurcate the possession element of the crime from the felon element. Barker, 1 F.3d at 958. On appeal the Ninth Circuit reversed, stating:
 
 
 30
 Any other holding would have three impermissible results. First, if the jury did not return a guilty verdict on the possession portion of the crime, the government would be precluded from proving an essential element of the charged offense. Second, a bifurcated proceeding would withhold from the jury all knowledge of the prior felony element of the crime. Third, the bifurcation order would require omitting an element of the charged offense from the jury instructions. A district court may not eliminate an element of the crime charged.
 
 
 31
 Barker, 1 F.3d at 959-60 (citations omitted).
 
 
 32
 Most other circuits follow the Barker rule. See United States v. Jacobs, 44 F.3d 1219, 1223 (3d Cir.), cert. denied, 115 S.Ct. 1835 (1995); United States v. Gilliam, 994 F.2d 97, 101-02 (2d Cir.), cert. denied, 114 S.Ct. 335 (1993); United States v. Birdsong, 982 F.2d 481, 482 (11th Cir.), cert. denied, 508 U.S. 980 (1993); United States v. Collamore, 868 F.2d 24, 27 (1st Cir.1989); United States v. Aleman, 609 F.2d 298, 310 (7th Cir.1979), cert. denied, 445 U.S. 946 (1980); United States v. Brinklow, 560 F.2d 1003, 1006 (10th Cir.1977), cert. denied, 434 U.S. 1047 (1978)). Although this court has not previously adopted that rule, we do so today. Accordingly, we conclude that district court did not err in denying Gerald's bifurcation motion.[3]
 
 E. Hearsay Statements of Vivian Earsery
 
 33
 Gerald's Presentence Report indicates that following Vivian Earsery's arrest on July 14, 1993, she told the police that she had accepted the package on behalf of Gerald, who promised to pay her $100 to bring it to him. Earsery, who died prior to Gerald's sentencing, further advised the police that she had previously received three other packages for Gerald under the same arrangement. Gerald contends that the district court erred in considering these statements in order to hold him responsible at sentencing for the crack cocaine contained in the package delivered to Earsery.
 
 
 34
 We have specifically held that courts may " 'consider hearsay evidence in determining sentence [so long as] the evidence bear[s] some minimal indicia of reliability in respect to the defendant's right to due process.' " United States v. Silverman, 976 F.2d 1502, 1512 (6th Cir.1992) (en banc) (quoting United States v. Robinson, 898 F.2d 1111, 1115 (6th Cir.1990)), cert. denied, 507 U.S. 990 (1993). "In challenges to the evidence considered by the sentencing judge, the defendant must establish that the challenged evidence is materially false or unreliable, and that such false or unreliable information actually served as the basis for the sentence." Robinson, 898 F.2d at 1116.
 
 
 35
 Gerald maintains that Earsery's statements are unreliable because, as she had just been arrested for drug trafficking, the statements were merely an attempt to shift the blame to someone else. Furthermore, Gerald asserts that the government established no connection between Earsery and himself at trial. The government responds that Earsery's statements were sufficiently reliable because: (1) it was against her penal interest to admit that she had agreed to deliver the package in exchange for cash; (2) Earsery, consistent with her asserted role as a courier, left her residence with the unopened package shortly after receiving it; and (3) Earsery uttered the statements at issue with knowledge that she was dying, making it unlikely that she was attempting to avoid liability. Under all of the circumstances, we conclude that the district court did not abuse its discretion in considering Earsery's statements.
 
 
 36
 F. Career Offender and Armed Career Criminal Classifications
 
 
 37
 The district court found that Gerald's prior convictions qualified him as both a career offender under U.S.S.G. § 4B1.1 and an armed career criminal under U.S.S.G. § 4B1.4. Section 4B1.1 provides that "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Section 4B1.4 provides that "[a] defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal." Section 924(e)(1) provides, in turn, for an enhanced sentence if the instant offense of conviction is a violation of § 922(g), and the defendant has at least three prior convictions for a "violent felony" or "serious drug offense," as defined by the statute, or both, committed on different occasions from one another.
 
 
 38
 Gerald's prior convictions are for: (1) armed robbery and malicious shooting in 1977; (2) armed bank robbery in 1978; and (3) first degree robbery in 1979. Based on the age of these convictions, Gerald argues that they should not have been used to enhance his sentence. In support of his position, Gerald points to the ten-year rule on prior convictions used for impeachment purposes contained in Federal Rule of Evidence 609(b) and the fifteen-year rule of U.S.S.G. § 4A1.2(e) for prior convictions considered in a defendant's criminal history.
 
 
 39
 Gerald's position is meritless. The career offender provision of the Guidelines does employ the fifteen-year rule of U.S.S.G. § 4A1.2(e). See U.S.S.G. § 4B1.2, Application Note 4. Felony convictions occurring outside of the fifteen-year window are still considered, however, if the defendant was incarcerated as a result of that conviction at any time during the fifteen-year period. See U.S.S.G. § 4A1.2(e)(1). This latter provision renders it appropriate for the district court to have considered Gerald's convictions. Indeed, Gerald's counsel appears to have conceded that point at sentencing: "I'm going to withdraw my objection with reference to criminal history. I believe Probation and Parole is correct in their reference to the Guidelines, the fact that if they served any ... part of their sentence during the 15 years prior can be used in the ascertainment of criminal history for the defendant."
 
 
 40
 Gerald's contentions in regard to the Guidelines' armed career criminal provision are also meritless. Section 924(e) does not impose any time limit on convictions used to support an enhancement under that section. United States v. Moreno, 933 F.2d 362, 373 (6th Cir.) (holding that fifteen-year rule of U.S.S.G. § 4A1.2 does not apply to § 924(e) because "[a]lthough the Sentencing Guidelines may restrict the sentencing court's consideration of certain past offenses, § 924(e) does not"), cert. denied, 502 F.2d 895 (1991).[4] Accordingly, we find no error in classifying Gerald as a career offender and an armed career criminal.
 
 
 41
 G. Sufficiency of Evidence on the Felon-In-Possession Count
 
 
 42
 To support a conviction under 18 U.S.C. § 922(g)(1), the evidence must be sufficient to satisfy three elements: (1) that defendant was convicted of a felony punishable by imprisonment for more than one year; (2) that following his conviction, defendant knowingly possessed the firearm specified in the indictment; and (3) that the firearm specified in the indictment was shipped in, or affected, interstate or foreign commerce. Gerald only challenges the evidence in regard to the second element, asserting that it was insufficient to support the jury's finding that he possessed the firearm found in the South First Street apartment because the government did not establish any link between himself and the gun at trial, and because the evidence showed that Vivian Earsery, Susan Suarez and Suarez's children also had access to the area in which the gun was discovered.
 
 
 43
 In reviewing a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting Jackson ). Circumstantial evidence may be sufficient to support a conviction and such evidence need not remove every reasonable hypothesis of innocence. United States v. Seaton, 45 F.3d 108, 110 (6th Cir.), cert. denied, 115 S.Ct. 2012 (1995).
 
 
 44
 Both actual and constructive possession satisfy the possession element for purposes of § 922(g). United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied, 414 U.S. 866 (1973). Actual possession exists when a person has immediate possession or control of an object. Id. Constructive possession exists when a person "knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." Id. Possession may be exclusive or joint. Id.
 
 
 45
 The testimony of both Gerald and Suarez indicates that they were jointly occupying the South First Street apartment at the time of the search and had done so for approximately eleven months previously. The evidence also establishes that the gun was found in their bedroom in the apartment. In fact, the chest of drawers in which the gun was found was owned by Suarez, and she testified that the chest contained some of Gerald's personal belongings. Finally, Suarez testified unequivocally that she did not know about the gun and that it was not hers. This evidence provides an adequate basis for the jury's conclusion that Gerald constructively possessed the firearm in question.
 
 H. Flight Evidence
 
 46
 As indicated previously, Gerald failed to appear at his preliminary hearing in Kentucky state court after being released from custody on his own recognizance and was apprehended approximately four months later in North Carolina. Although Gerald claimed that he was merely visiting a sick sister, the district court viewed Gerald's trip to North Carolina as an attempt to flee his state drug prosecution and admitted evidence of the circumstances surrounding his departure from Kentucky. Gerald now challenges that ruling.
 
 
 47
 Evidence of flight is admissible if relevant and not unfairly prejudicial. United States v. Dillon, 870 F.2d 1125, 1126 (6th Cir.1989). The probative value of flight evidence
 
 
 48
 "depends upon the degree with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt concerning the crime charged."
 
 
 49
 Id. at 1127 (quoting United States v. Meyers, 550 F.2d 1036 (5th Cir.1977), cert. denied, 439 U.S. 847 (1978)). We review the admission of flight evidence for an abuse of discretion. Id. at 1126. An abuse of discretion " 'is defined as a definite and firm conviction that the trial court committed a clear error of judgment.' " Monette v. AM-7-7 Baking Co., 929 F.2d 276, 280 (6th Cir.1991) (quoting Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989)).
 
 
 50
 The district court found the evidence at issue admissible under Dillon. Gerald argues that his behavior cannot reasonably be construed as flight based on his uncontested testimony, corroborated by the testimony of Suarez, that he merely went to North Carolina to visit his ailing sister. The district court, however, properly rejected Gerald's explanation for leaving Kentucky and drew an inference of flight by reason of these circumstances: (1) Gerald was arrested and present in state court on July 26, 1993 when his preliminary hearing was continued to August 30; (2) Gerald left Kentucky shortly after being released on his own recognizance on July 26; (3) Gerald failed to failed to appear in state court on August 30, or any date thereafter; (4) Gerald was under probation supervision from a previous case, which prohibited him from leaving the jurisdiction without permission; (5) Gerald did not inform his probation officer that he was going to North Carolina; (6) Gerald was arrested as a fugitive and had been absent from Kentucky for four months at the time of his apprehension; and (7) Gerald left Kentucky without telling anyone, including his own family members, that he was leaving or his destination. In fact, Gerald admitted that part of his motivation for leaving Kentucky was fear of incarceration on the state charges.
 
 
 51
 Gerald argues that, even if his behavior can be construed as flight, the other Dillon inferences cannot be met due to the fact that the federal indictment against him was not filed until more than a year after his trip to North Carolina. There is no per se rule against admitting evidence of flight which occurred before an indictment is filed. See Dillon, 870 F.2d at 1127 (holding admissible evidence of flight occurring after coconspirator told defendant that he would testify truthfully about defendant's role in a drug sale, but more than two years prior to federal indictment against defendant).
 
 
 52
 The government, relying upon United States v. Smart, 41 F.3d 263 (6th Cir.1994), argues that the only relevant fact is that Gerald's flight was predicated on the conduct underlying the federal charge. Smart involved a defendant who was twice apprehended in 1990 by state authorities for selling cocaine and subsequently made bail under a fake name and fled the jurisdiction each time. After local authorities called in the FBI, the defendant was indicted and convicted on two counts of federal controlled substances violations. The district court enhanced the defendant's sentence for obstruction of justice under U.S.S.G. § 3C1.1 based upon his flights from state authorities. On appeal, Smart argued that those actions were unrelated to the federal case and thus that the district court erred in enhancing his sentence on that basis. We affirmed, however, holding that the enhancement was not erroneous because "Smart's [federal] indictment, conviction and sentence stem directly from the arrests in which he used a false name to make bail and flee." Id. at 266.
 
 
 53
 We find the holding in Smart instructive in this case. As stated in Dillon, the real question is not whether the flight occurred before the indictment, but rather, whether the flight evidence is "sufficiently probative of a guilty conscience to overcome the prejudice it entails." Dillon, 870 F.2d at 1127-28. The Dillon court went on to state:
 
 
 54
 flight may be proven where it occurs after any event which would tend to spark a sharp impulse of fear of prosecution or conviction in a guilty mind. This might occur long after the defendant learns of the charges.... [a]nd it can occur long before the defendant learns of the charges: for instance, when flight occurs after the defendant is served, himself with a subpoena to appear before a Grand Jury. Indeed, the "commencement of an investigation" may substitute for an accusation as the precipitating event.
 
 
 55
 Id. at 1128 (citations omitted). In our view, the district court properly admitted the evidence of Gerald's flight. Despite the fact that his flight was from state authorities, as opposed to federal authorities, the inference of guilt is constant because the same conduct formed the basis for both the state and federal charges.
 
 I. Obstruction of Justice Enhancement
 
 56
 Gerald also contends that the district court erred in using the flight evidence as a basis for enhancing his sentence under U.S.S.G. § 3C1.1 for obstruction of justice. We review that decision for an abuse of discretion. Smart, 41 F.3d at 264. Section 3C1.1 authorizes a two-point base offense level enhancement where "the defendant willfully obstructs or impedes or attempts to obstruct or impede, prosecution or sentencing of the instant offense." Application Note 3(e) describes the type of conduct to which this enhancement applies as "escaping or attempting to escape from custody before trial or sentencing or willfully failing to appear, as ordered, for a judicial proceeding."
 
 
 57
 We find no error here. See United States v. Adediran, 26 F.3d 61, 65 (8th Cir.1994) (holding that defendant's failure to appear in a state court proceeding warranted an enhancement for obstruction of justice in the connected federal prosecution); see also United States v. Emery, 991 F.2d 907, 910-12 (1st Cir.1993) (holding that enhancement of defendant's sentence for obstruction of justice was justified by his escape from state custody, even though the escape took place prior to initiation of federal investigation that led to defendant's federal arrest and conviction); United States v. Lato, 934 F.2d 1080, 1082-83 (9th Cir.) (holding that pursuant to § 3C1.1, defendant's acts of obstruction committed during investigation by state could be used in determining defendant's federal offense level), cert. denied, 502 U.S. 897 (1991).[5]
 
 J. Severance
 
 58
 Prior to trial, Oliver moved pursuant to Federal Rule of Criminal Procedure 14 to sever from Gerald. He argued that there was a substantial risk that the jury would find him guilty by association due to the substantial difference in the amount of evidence against Gerald regarding the alleged drug activity, the evidence of Gerald's flight from state authorities, and the evidence of Gerald's prior convictions. The district court denied this motion. Since Oliver failed to renew his motion for severance at the close of all the proof, thereby waiving it, our review is limited to plain error. See United States v. Bond, 22 F.3d 662, 666 (6th Cir.1994); United States v. Patrick, 965 F.2d 1390, 1400 (6th Cir.), cert. denied, 506 U.S. 940 (1992).
 
 
 59
 The general rule is that defendants who are indicted together should be tried together. United States v. Warner, 971 F.2d 1189, 1196 (6th Cir.1992). A showing that a defendant would have a better chance of acquittal in a separate trial does not establish prejudice requiring severance. Id. Rather, the defendant must make a strong showing of specific and compelling prejudice. United States v. Lloyd, 10 F.3d 1197, 1215 (6th Cir.1993), cert. denied, 115 S.Ct. 219 (1994); United States v. Causey, 834 F.2d 1277, 1287 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988). The mere fact that there is " 'a substantial difference in the amount of evidence adduced against each defendant is not grounds to overturn a denial of severance unless there is a substantial risk that the jury could not compartmentalize or distinguish between the evidence against each defendant.' " Lloyd, 10 F.3d at 1215 (quoting United States v. Williams, 711 F.2d 748, 751 (6th Cir.), cert. denied, 464 U.S. 986 (1983)). Even if a defendant establishes some potential jury confusion, this must be balanced against society's need for speedy and efficient trials. United States v. Johnson, 763 F.2d 773, 777 (6th Cir.), cert. denied, 486 U.S. 1034 (1988). Additionally, "severance is not required if some evidence is admissible against some defendants and not against others." Warner, 971 F.2d at 1196. Furthermore, the fact that a codefendant has a criminal record does not entitle a defendant to a severance. Id.
 
 
 60
 Oliver relies primarily upon United States v. Davidson, 936 F.2d 856 (6th Cir.1991), but we find that case distinguishable. First, the case at bar involves a four count indictment, only one of which does not name Oliver, and the majority of the proof related to the drug counts, which did involve Oliver. Thus, the chances that prejudicial "spillover" occurred are much less likely than in Davidson. Second, and most importantly, unlike the amended tax return in Davidson, none of the evidence that Oliver claims is prejudicial to him directly impacts his case. We conclude that Oliver has failed to establish the requisite prejudice for a severance in his case. Indeed, the district court specifically instructed the jury not to consider Gerald's flight or prior convictions in relation to the charges against Oliver and, more generally, to consider the case of each defendant individually.
 
 V. CONCLUSION
 
 61
 Based on the foregoing, we AFFIRM the convictions of Gerald and Oliver Underwood as to all counts and AFFIRM the sentence of Gerald Underwood.
 
 
 
 [1]
 Since defendants do not contend that the length of time that the packages were detained was unreasonable, we do not address that issue
 
 
 [2]
 Gerald also argues that Earsery's consent was not effective. We do not reach that issue since we conclude below that Suarez's consent justified the search
 
 
 [3]
 Gerald does not address or even cite Barker in his briefs. Instead, he relies principally upon the case of United States v. Dockery, 955 F.2d 50 (D.C.Cir.1992), which we find to be inapposite as it involved a motion to sever the felon-in-possession count from the other counts against the defendant, not a motion to bifurcate
 
 
 [4]
 We consider frivolous Gerald's argument that the district court erred in enhancing his sentence because "[t]he § 922(g) charge of possession of a firearm does not fall within [the Guidelines definition of "crime of violence"] and consequently cannot be used for enhancement purposes." As the government points out, career offender status is also accorded in connection with controlled substance offenses, of which Gerald was convicted along with the felon-in-possession charge. See U.S.S.G. § 4B1.1
 
 
 [5]
 All of the foregoing authority was cited with apparent approval in Smart. See Smart, 41 F.3d at 266